JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MICHAEL KORNSPUN

**DEFENDANTS**
PENNROSE PROPERTIES, INC., PENNROSE PROPERTIES, LLC, PENNROSE MANAGEMENT COMPANY, & PENNROSE, LLC

**(b)** County of Residence of First Listed Plaintiff   Westchester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Katherine C. Oeltjen , Esquire
Console Mattiacci Law LLC, 1525 Locust Street, 9th Floor
Philadelphia, PA 19102 215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):* 29 U.S.C. §621 et seq. ("ADEA"); 42 U.S.C. §12101, et seq. ("ADA"); 29 U.S.C. §2601, et seq. ("FMLA"); 43 P.S. §951, et seq. ("PHRA"); Phila Code §9-1101, et seq. ("PFPO") and the Pennsylvania Common Law.

Brief description of cause:
Plaintiff brings this action against his former employer for unlawful age and disability discrimination.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
September 15, 2022

SIGNATURE OF ATTORNEY OF RECORD
*Katherine C. Oeltjen*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ North Salem, NY _____

Address of Defendant: One Brewery Park, 1301 N. 31st Street, Philadelphia, PA 19121; 230 Wyoming Avenue, Kingston, PA 18974

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 9/15/2022      /s/ Katherine C. Oeltjen      318037

_____  _____  _____
                                 *Attorney-at-Law / Pro Se Plaintiff*                    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.**   *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

## ARBITRATION CERTIFICATION

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Katherine C. Oeltjen, Esquire , counsel of record *or* pro se plaintiff, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs.

- ☐ Relief other than monetary damages is sought.

DATE: 9/15/22      /s/ Katherine C. Oeltjen      318037

_____  _____  _____
                                 *Attorney-at-Law / Pro Se Plaintiff*                    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Michael Kornspun | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| Pennrose Properties, Inc., Pennrose Properties, LLC, | : | |
| Pennrose Management Company, & Pennrose, LLC | : | NO. |
| Defendants. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.              ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                               ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

| | | |
|---|---|---|
| September 15, 2022 | | Plaintiff, Michael Kornspun |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-565-2859 | oeltjen@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL KORNSPUN<br>North Salem, NY 10560<br>                         Plaintiff,<br>    v.<br><br>PENNROSE PROPERTIES, INC<br>One Brewery Park<br>1301 N. 31st Street<br>Philadelphia, PA 19121<br><br>and<br><br>PENNROSE PROPERTIES, LLC<br>One Brewery Park<br>1301 N. 31st Street<br>Philadelphia, PA 19121<br><br>and<br><br>PENNROSE MANAGEMENT COMPANY<br>One Brewery Park<br>1301 N. 31st Street<br>Philadelphia, PA 19121<br><br>and<br><br>PENNROSE, LLC<br>230 Wyoming Avenue<br>Kingston, PA 18794<br><br>                         Defendants. | CIVIL ACTION NO.:<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

## I.    INTRODUCTION

Plaintiff, Michael Kornspun ("Plaintiff"), brings this action against Defendants Pennrose Properties, Inc., Pennrose Properties, LLC, Pennrose Management Company, and Pennrose LLC (collectively, "Defendants") pursuant to the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.* ("ADEA"), the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.* ("ADA"), the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA"), the Pennsylvania Human Relations Act, as amended 43 P.S. §951, *et seq.* ("PHRA"), Philadelphia Fair Practices Ordinance, Phila Code §9-1101, *et seq.* ("PFPO") and the Pennsylvania Common Law.

## II.    PARTIES

1.      Plaintiff, Michael Kornspun, is a citizen of New York State.

2.      Plaintiff resides in North Salem, New York 10560.

3.      Plaintiff was born in 1956.

4.      Defendant Pennrose Properties, Inc. is a Pennsylvania corporation with a principal place of business located at One Brewery Park, 1301 N. 31st Street, Philadelphia, PA 19121.

5.      Defendant Pennrose Properties, LLC is a Pennsylvania corporation with a principal place of business located at One Brewery Park, 1301 N. 31st Street, Philadelphia, PA 19121.

6.      Defendant Pennrose Management Company is a Pennsylvania corporation with a principal place of business located at One Brewery Park, 1301 N. 31st Street, Philadelphia, PA 19121.

7.      Defendant Pennrose, LLC is a Pennsylvania corporation with a headquarters address of 230 Wyoming Avenue, Kingston, PA 18704.

8.      Defendants Pennrose Management Company and Pennrose Properties, LLC are wholly owned subsidiaries of Defendant Penrose Properties, Inc.

9.      At all material times, Defendants have acted as a single employer, joint employers and/or alter egos.

10.     Defendants are engaged in an industry affecting interstate commerce and regularly conduct business in the Commonwealth of Pennsylvania and the City of Philadelphia.

11.     At all times material hereto, Defendants employed more than fifty (50) people within seventy-five (75) miles of Plaintiff's work location and more than four (4) employees within the Commonwealth of Pennsylvania.

12.     At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

13.     At all times material hereto, Defendants, collectively and individually, were "employer(s)" within the meaning of the statutes which form the basis of this matter.

14.     At all times material hereto, Plaintiff was an "employee" of Defendants, collectively and individually, within the meaning of the statutes which form the basis of this matter.

**III.     <u>JURISDICTION AND VENUE</u>**

15.     The causes of action which form the basis of this matter arise under the ADEA, the ADA, the FMLA, the PHRA, the PFPO and Pennsylvania Common Law.

16.     The District Court has jurisdiction over Counts I (ADEA), II (ADA), and III (FMLA) pursuant to 28 U.S.C. §1331.

17.     The District Court has supplemental jurisdiction over Count IV (PHRA) Count V (PFPO) and Count VI (Pennsylvania Common Law) pursuant to 28 U.S.C. §1367.

18.     The District Court has jurisdiction over all Counts I-VI pursuant to 28 U.S.C. §1332 since the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interests and costs, and as there is complete diversity of citizenship as Plaintiff is a citizen of New York and Defendants are citizens of Pennsylvania.

19.     Venue is proper in this District Court under 28 U.S.C. §1391(b).

20.     On or about February 25, 2021, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") and cross-filed with Equal Employment Opportunity Commission ("EEOC") complaining of the acts of discrimination alleged herein. Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the Compliant (with personal identifying information redacted).

21.     On or about June 27, 2022, the EEOC issued to Plaintiff a Notice of Right to Sue for the above Complaint/Charge. Attached hereto and marked as Exhibit "2" is a true and correct copy of the Notice (with personal identifying information redacted).

22.     Plaintiff has fully complied with all administrative prerequisites for commencement of this action.

4

## IV.    FACTUAL ALLEGATIONS

23.    Plaintiff began working for Defendants on or about November 1, 2017 as a Senior Developer.

24.    In the job offer letter to Plaintiff, dated September 5, 2017 ("Offer Letter"), Defendants promised Plaintiff a base salary and bonus.

25.    In the Offer Letter, Defendants also promised Plaintiff "5% developer fee payable on Sharswood when fee is earned…"

26.    The Offer Letter stated that the fee payment was "contingent" on "employment with Pennrose Properties" without further explanation.

27.    On or about July 12, 2019, Plaintiff and Defendants agreed to modify the offer letter by way of letter agreement ("2019 Letter").

28.    The 2019 Letter eliminated the 5% developer fee on Sharswood, and, in its place, promised Plaintiff a bonus payment of 3% of the developer fee and cash flow on the NYCHA Hope Gardens and Bushwick Gardens projects.

29.    The 2019 Letter stated that the payments were "contingent" on employment at the time of payment.

30.    The 2019 Letter formed a contract between Plaintiff and Defendants, governing the bonus payments owed to Plaintiff in exchange for his performance for Defendants.

31.    Plaintiff is highly experienced in real estate development, acquisitions, finance and valuation. He has worked for more than thirty (30) years in senior real estate positions with major banks, investment firms, and affordable and market rate developers and investors.

5

32.     Defendants are engaged in developing and managing affordable, conventional, mixed income and mixed-use projects on a nation-wide basis.

33.     Plaintiff consistently performed his job duties well.

34.     Plaintiff last reported to Dylan Salmons (32), Regional Vice President.  Salmons reported to Timothy Henkel (51), Senior Vice President and Principal.  Henkel reported to Mark Dambly ("Dambly") President, and Richard Barnhart ("Barnhart"), Chief Executive Officer.

35.     Before reporting to Salmons, Plaintiff reported to Henkel, and he and Salmons were peers.

36.     In or about December 2018, Dambly asked Plaintiff his age.

37.     Dambly expressed his interest in hiring younger employees to Plaintiff.

38.     Salmons was selected for, and participated in, Defendants' Emerging Leaders Workshop, which included twenty (20) "high potential Pennrose employees."

39.     Plaintiff was not selected to participate in the Emerging Leaders Workshop at any time during his employment.

40.     Defendants' website states the following about the Emerging Leaders Workshop: "The year-long talent-immersion program is designed to furnish growth opportunities, celebrate successes, and educate the future leaders of Pennrose business. The agenda for each session typically included business updates, time with Senior Management, a case study or book study on relevant leadership issues, several targeted diagnostics, and development planning exercises. The sessions also included leadership and relationship building training, skills practice, and role playing."

6

41.     Dambly is quoted on the website with the following statement about the employees selected for Defendants' Emerging Leaders Workshop: "Each was identified as a potential future leader of Pennrose and we look forward to seeing how they utilize their new skills to support their roles and organization growth."

42.     Defendants' Emerging Leaders Workshop intentionally discriminates and/or has a disparate impact based on age.

43.     Defendants failed to select Plaintiff for the Emerging Leaders Workshop because of his age.

44.     In or about December 2019, Henkel asked Plaintiff his age.

45.     In or about December 2019, Defendants failed to promote Plaintiff to Regional Vice President.

46.     Instead, Defendants promoted Salmons (32).

47.     Plaintiff was qualified for the position.

48.     Plaintiff did not have the opportunity to apply for the position.

49.     The position was not posted.

50.     If the position had been posted, Plaintiff would have applied or the position.

51.     Defendants failed to promote Plaintiff because of his age.

52.     On or about September 3, 2020, Plaintiff began reporting to Salmons.

53.     Plaintiff was the oldest employee reporting to Salmons.

54.     In fact, Plaintiff was the second-oldest Development employee within Defendants' organization at that time.

55.     Defendants preferred hiring and retaining younger employees in Development.

7

56.    On November 9, 2020, in an email to Henkel, Plaintiff notified Defendants that he was disabled.

57.    Plaintiff's email stated the following, in part: "I went for a CT scan on a minor issue and it picked something completely unrelated. Very serious but very early. Biopsy this week (Wed.), follow up next week, surgery if required a couple of weeks later. Highly unlikely it will require any more than that, and there's very low likelihood of recurrence."

58.    Plaintiff was diagnosed with cancer.

59.    As he learned more about his medical condition/disability, he updated Henkel and Defendants on his medical condition/disability.

60.    For example, on November 23, 2020, in an email to Henkel, Plaintiff wrote, in part: "So just quickly, biopsy came back indicating I'm going to need surgery, probably 12/9 or 12/16. Again, very serious but very early, >97% cure rate through surgery alone. It's going to take a couple of weeks to recover from surgery, then life proceeds as normal. There are a number of appointments/tests in advance to prepare, so we'll have to accommodate these. The prognosis really is excellent, so I'm grateful. I'm set up to speak with Dylan later today. Will need support on the workload, which is pretty intense – but would need that anyway, just more so now.

61.    On November 23, 2020, Plaintiff told Salmons and Kimberly Moffa ("Moffa"), Vice President of Human Resources, that he was diagnosed with a substantial health issue that required major surgery in December 2020.

62.    Shortly after Plaintiff notified Defendants of his need for surgery for a medical condition/disability, Salmons and Henkel increased his workload and gave him unrealistic deadlines to complete the work before his surgery.

63.     When Plaintiff reminded Salmons and Henkel that it was not feasible to complete the assignments within the deadline amid his medical condition/surgery, he was given unwarranted criticism and otherwise made to understand that Salmons and Henkel were displeased with Plaintiff.

64.     Three days prior to his medical leave for surgery and recovery, on or about December 13, 2020, Plaintiff was given an unwarranted negative performance review.

65.     On December 16, 2020, Plaintiff began medical leave and had a lung segmentectomy; surgery to remove cancer from his lung.

66.     Plaintiff was ultimately diagnosed with Stage 1 non-small-cell lung cancer, adenocarcinoma.

67.     Plaintiff took FMLA/medical leave from December 16, 2020 to December 29, 2020 for surgery and recovery.

68.     Plaintiff requested the reasonable accommodation of returning to work remotely.

69.     Defendants granted the reasonable accommodation request.

70.     Plaintiff returned to work on or about December 30, 2020.

71.     On or about January 8, 2021, Plaintiff requested that Salmons meet to discuss the unfair performance review.

72.     Henkel responded, though the request was directed to Salmons, and indicated that he would meet with Plaintiff.

73.     Henkel scheduled the meeting or January 15, 2021, ultimately postponing it to January 22, 2021.

9

74.    On January 22, 2021, in a virtual meeting with Henkel, Moffa and RJ Saturno ("Saturno"), Vice President of Compliance and Security, Defendants terminated Plaintiff, effective immediately.

75.    At the time of his termination, the NYCHA Hope Gardens and Bushwick project(s) were on-track and proceeding on a schedule to require Defendants to pay Plaintiff the bonus promised in the 2019 Letter.

76.    Plaintiff performed significant work on the Hope Gardens and Bushwick project pursuant to the 2019 Letter to Defendants' benefit.

77.    The bonus owed to Plaintiff under the promises made in the 2019 Letter exceed approximately $400,000.

78.    Defendants received certain developer fees contemplated by the 2019 Letter after Plaintiff's termination.

79.    Defendants knew that the developer fees were forthcoming at the time of Plaintiff's termination.

80.    In terminating Plaintiff, Defendants withheld the 2019 Letter's promised payments as well as other bonus payments available under Defendants' "Senior Developer Bonus Program"; keeping in excess of $500,000.

81.    Defendants benefitted substantially from Plaintiff's performance in connection with the Hope Gardens and Bushwick Gardens projects.

82.    The stated reason for Plaintiff's termination was that Plaintiff was not "a good fit."

83.    Defendants told Plaintiff that he was not terminated "for cause."

10

84.    When Plaintiff asked about the bonus payments owed to him, after some delay, Saturno told him that Defendants didn't "feel" Plaintiff was owed anything as many others had worked on the projects.

85.    At no time was his termination or failure to be employed at the time that the developer fees were paid cited as a reason(s) for depriving him of the benefit of the 2019 Letter.

86.    Following his termination, Defendants hired William D'Avella ("D'Avella") (32), Developer.

87.    Defendants replaced Plaintiff with D'Avella.

88.    D'Avella is substantially younger than Plaintiff.

89.    Plaintiff was more qualified and experienced to perform his job duties and responsibilities than the substantially younger, nondisabled employees who did not seek reasonable accommodations for a disability.

90.    Before Plaintiff notified Defendants of his disability, he had never been given any indication that his job was in jeopardy.

91.    Defendants retained nondisabled and/or substantially younger employees and/or employees who had not sought reasonable accommodations in positions for which Plaintiff was more qualified.

92.    Defendants did not offer Plaintiff a downgraded position or a position with reduced pay or any opportunity to remain employed before terminating his employment.

93.    Defendants terminated Plaintiff's employment because of his disability and/or his age and/or his seeking reasonable accommodations for my disability.

94.    Defendants terminated Plaintiff in retaliation for taking FMLA leave.

95.     Defendants terminated Plaintiff in the time and manner detailed herein in order to deny him payments promised to him under the July 2019 Letter.

96.     Defendants' comments and conduct evidence a bias against disabled and/or older employees and/or employees who seek reasonable accommodations for a disability.

97.     As a direct and proximate result of Defendants' discriminatory and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

98.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT I—ADEA

99.     Plaintiff incorporates herein by reference the above paragraphs as if forth herein in their entirety.

100.     By committing the foregoing acts of discrimination against Plaintiff, Defendants have violated the ADEA.

101.     Defendants' violations of the ADEA were intentional and willful under the circumstances, warranting the imposition of liquidated damages.

102.     As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff has suffered the injuries, damages and losses set forth herein.

103.     Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

104.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

## COUNT II – ADA

105.     Plaintiff incorporates herein by reference the above paragraphs as if forth herein in their entirety.

106.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

107.     Defendants acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

108.     As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

109.      Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

## COUNT III—FMLA

110.     Plaintiff incorporates herein by reference the above paragraphs as if forth herein in their entirety.

111.     By committing the foregoing acts against Plaintiff, Defendants have violated the FMLA.

13

112.    Defendants' conduct was retaliatory.

113.    Said violations were willful, not in good faith and Defendants did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA.

114.    The imposition of liquidated damages is warranted.

115.    As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

116.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' violations of the FMLA unless this Court grants the relief requested herein.

## COUNT IV—PHRA

117.    Plaintiff incorporates herein by reference the above paragraphs as if forth herein in their entirety.

118.    Defendants, by the above improper and discriminatory and retaliatory acts, have violated the PHRA.

119.    Said violations were intentional and willful.

120.    As a direct and proximate result of the Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

121.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of the Defendants' discriminatory acts unless and until the Court grants the relief requested herein.

## COUNT V—PFPO

122.     Plaintiff incorporates herein by reference the above paragraphs as if forth herein in their entirety.

123.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PFPO.

124.     Defendants acted willfully and intentionally, and with malice and/or reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

125.     As a direct and proximate result of Defendants' violation of the PFPO, Plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

126.     Plaintiff is now suffering and will continue to suffer the irreparable injury and monetary damages as a result of Defendants' discriminatory, retaliatory and unlawful acts unless and until this Court grants the relief requested herein.

127.     No previous application has been made for the relief requested herein.

## COUNT VI—BREACH OF CONTRACT: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

128.     Plaintiff incorporates herein by reference the above paragraphs as if forth herein in their entirety.

129.      In terminating Plaintiff in order to deny him payments owed to him under the July 2019 Letter, Defendants breached the July 2019 Letter and the covenant of good faith and fair dealing implied in every contract entered into in the Commonwealth of Pennsylvania.

130.     As a direct and proximate result of the said actions of Defendants, Plaintiff has suffered the damages and losses set forth herein.

15

131.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's acts unless and until this Court grants the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of the ADEA;

(b) declaring the acts and practices complained of herein to be in violation of the ADA;

(c) declaring the acts and practices complained of herein to be in violation of the FMLA;

(d) declaring the acts and practices complained of herein to be in violation of the PHRA

(e) declaring the acts and practices complained of herein to be in violation of the PFPO;

(f) declaring the acts and practices complained of herein to be in violation of the common law;

(g) enjoining and permanently restraining the violations alleged herein;

(h) entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(i) awarding compensatory damages to make the Plaintiff whole for all lost earnings, including without limitation bonus payments, earning capacity and benefits, past and

future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(j)  awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(k) awarding liquidated damages to Plaintiff;

(l)  awarding punitive damages to Plaintiff;

(m) awarding Plaintiff other such damages as are appropriate under the ADEA, the ADA, the FMLA, the PHRA, the PFPO and the common law of the Commonwealth of Pennsylvania;

(n)  awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

(o)  granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.


Dated: September 15, 2022              BY: */s/Katherine C. Oeltjen*_____
                                            Stephen G. Console, Esquire (36656)
                                            Katherine C. Oeltjen, Esquire (318037)
                                            CONSOLE MATTIACCI LAW, LLC
                                            1525 Locust Street, 9th Floor
                                            Philadelphia, PA 19102
                                            (215) 545-7676

                                            *Attorneys for Plaintiff*

# EXHIBIT 1

## COMMONWEALTH OF PENNSYLVANIA
### GOVERNOR'S OFFICE
### PENNSYLVANIA HUMAN RELATIONS COMMISSION

## **COMPLAINT**

| | | |
|---|---|---|
| COMPLAINANT: | : | |
| | : | |
| **MICHAEL KORNSPUN** | : | Docket No. |
| | : | |
| v. | : | |
| | : | |
| RESPONDENTS: | : | |
| | : | |
| **PENNROSE PROPERTIES, INC.** | : | |
| | : | |
| and | : | |
| | : | |
| **PENNROSE PROPERTIES, LLC** | : | |
| | : | |
| and | : | |
| | : | |
| **PENNROSE MANAGEMENT COMPANY** | : | |
| | : | |
| and | : | |
| | : | |
| **PENNROSE, LLC** | : | |
| | : | |

1. The Complainant herein is:

   Name:     Michael Kornspun

   Address:   REDACTED
              North Salem, NY 10560

2. The Respondents herein are:

   Names:    Pennrose Properties, Inc., Pennrose Properties, LLC; Pennrose
             Management Company; Pennrose, LLC

   Address:   1301 North 31st Street
              Philadelphia, PA 19121

1

3.  I, <u>Michael Kornspun</u>, the Complainant herein, allege that I was subjected to unlawful discrimination because of my disability (including history of and regarded as) and my age (64), and retaliation because of my seeking reasonable accommodations for my disability, as set forth below.

### Discrimination and Retaliation

#### A. I specifically allege:

[1]     I began working at Respondents on or about November 1, 2017.

[2]     My birth date is May 1, 1956.

[3]     I consistently performed my job duties in a highly competent manner, and received positive feedback.

[4]     I last held the position of Senior Developer.

[5]     I last reported to Dylan Salmons (32[1]), Regional Vice President.  Salmons reported to Timothy Henkel (51), Senior Vice President.  Henkel reported to Mark Dambly, President, and Richard Barnhart, Chief Executive Officer.

[6]     Before reporting to Salmons, I reported to Henkel.

[7]     Before reporting to Salmons, Salmons and I held the same title and reported to Henkel.

[8]     I was the oldest employee reporting to Henkel.

[9]     In or about December 2018, Dambly asked me how old I was.

[10]    Dambly expressed his interest in hiring younger employees.

[11]    In or about 2019, Salmons was selected for, and participated in, Respondents' 2019 Emerging Leaders Workshop, which included twenty (20) "high potential

---

[1] References herein to an employee's age are to the best of my knowledge.

Pennrose employees." I was not selected to participate in the same. Respondents' website states the following about the Emerging Leaders Workshop: "The year-long talent-immersion program is designed to furnish growth opportunities, celebrate successes, and educate the future leaders of Pennrose business. The agenda for each session typically included business updates, time with Senior Management, a case study or book study on relevant leadership issues, several targeted diagnostics, and development planning exercises. The sessions also included leadership and relationship building training, skills practice, and role playing." Dambly is quoted with the following statement about the employees selected for Respondents' Emerging Leaders Workshop: "Each was identified as a potential future leader of Pennrose and we look forward to seeing how they utilize their new skills to support their roles and organization growth."

[12]     Respondents' Emerging Leaders Workshop intentionally discriminates and/or has a disparate impact based on age.

[13]     Respondents failed to select me for the Emerging Leaders Workshop because of my age.

[14]     In or about December 2019, Henkel asked me how old I was.

[15]     In or about December 2019, Respondents failed to promote me to Regional Vice President. Instead of promoting me, Respondents promoted Salmons (32). I was qualified for the position. I had no opportunity to apply for the position, as the position was not posted. If the position had been posted, I would have applied for it.

[16]     Respondents failed to promote me because of my age.

[17]     On or about September 3, 2020, I began reporting to Salmons.

[18]     I was the oldest employee reporting to Salmons.

[19]     I was the oldest Development employee at Respondents.

3

[20]     On November 9, 2020, in an email to Henkel, I stated the following: "I went for a CT scan on a minor issue and it picked something completely unrelated. Very serious but very early. Biopsy this week (Wed.), follow up next week, surgery if required a couple of weeks later. Highly unlikely it will require any more than that, and there's very low likelihood of recurrence."

[21]     On November 9, 2020, in a response email from Henkel, he stated the following: "That kind of stuff can be very unsettling. I'm not good at it–whether its me or a family member. One step at a time is the best advice I can muster while knowing its not so easy to follow."

[22]     On November 23, 2020, in an email to Henkel, I stated the following: "So just quickly, biopsy came back indicating I'm going to need surgery, probably 12/9 or 12/16. Again, very serious but very early, >97% cure rate through surgery alone. It's going to take a couple of weeks to recover from surgery, then life proceeds as normal. There are a number of appointments/tests in advance to prepare, so we'll have to accommodate these. The prognosis really is excellent, so I'm grateful. I'm set up to speak with Dylan later today. Will need support on the workload, which is pretty intense – but would need that anyway, just more so now."

[23]     On November 23, 2020, in a response email from Henkel, he stated the following: "Okay Mike. As we said. One step at a time. I think we should loop in HR. I can anonymously describe the situation and get some guidance if you haven't already spoken with them. I don't know any of the best practices in this particular situation but we/you should want to be sure your coverages are well understood."

[24]     On November 23, 2020, I told Salmons and Kimberly Moffa, Vice

President of Human Resources, that I was diagnosed with a substantial health issue that required

major surgery in December 2020.

[25]     In or about late November 2020 and early December 2020, as I was

preparing for surgery, Salmons and Henkel piled on me additional work to complete in an

unfeasible timeframe before my surgery. I told them that the assigned project, Hope Senior

Infill, was not feasible to complete in the timeframe provided, especially with my upcoming

surgery. They unjustly criticized me and indicated that they were displeased with me.

[26]     On December 13, 2020, I received an unfair performance review. My

performance did not warrant an unfair performance review.

[27]     On December 16, 2020, I went out of work on a medical leave of absence

for my surgery and recovery.

[28]     On December 16, 2020, I underwent a lung segmentectomy, surgery to

remove the cancer from my lung.

[29]     From December 16, 2020 through December 29, 2020, I was on a medical

leave of absence for my surgery and recovery.

[30]     On December 30, 2020, I returned to work with the reasonable

accommodation of working from home.

[31]     On January 8, 2021, I asked Salmons for a meeting to discuss my unfair

performance review. Henkel responded that he would schedule a meeting with me. Henkel

scheduled a meeting for January 15, 2021, which he postponed to January 22, 2021.

[32]     On January 22, 2021, in a virtual meeting with Henkel, Kimberly Moffa,

Vice President of Human Resources, and RJ Saturno, Vice President of Compliance and

5

Security, Respondents terminated my employment, effective immediately. The stated reason was that I was not a good fit. They told me that I was not terminated for cause.

[33] On January 25, 2021, Respondents hired William D'Avella (32), Developer.

[34] Respondents replaced me with D'Avella (32). I was more qualified and experienced to perform my job duties and responsibilities than the substantially younger, nondisabled employees who did not seek reasonable accommodations for a disability with whom I was replaced.

[35] Before I informed Respondents of my disability, I had no indication that my job was in jeopardy.

[36] I was the only employee reporting to Salmons who was terminated effective January 22, 2021.

[37] None of the substantially younger, nondisabled employees who did not seek reasonable accommodations were terminated.

[38] Respondents retained nondisabled and/or substantially younger employees and/or employees who had not sought reasonable accommodations in positions for which I was more qualified.

[39] I was the oldest employee directly reporting to Salmons.

[40] I was the only disabled[2] employee directly reporting to Salmons.

[41] I was the only employee directly reporting to Salmons who sought reasonable accommodations for a disability.

---

[2] References herein to an employee not having a disability and/or having requested reasonable accommodations for a disability are to the best of my knowledge.

6

[42]    At the time of my termination, in addition to me, the following employees were directly reporting to Salmons—all of whom were substantially younger and nondisabled. I was more qualified to perform these employees' positions.

>  (a) Jane Christen (29), Associate Developer;
>
>  (b) Dwan Stark (39), Associate Developer;
>
>  (c) Lee Jaffe (41), Developer.

[43]    I had no disciplinary or performance issues throughout my employment.

[44]    Respondents did not offer me a downgraded position or a position with reduced pay or any opportunity to remain employed before terminating my employment.

[45]    Respondents terminated my employment because of my disability and/or my age and/or my seeking reasonable accommodations for my disability.

[46]    Respondents' disability and age discriminatory and retaliatory conduct toward me has caused me emotional distress.

[47]    Respondents' comments and conduct evidence a bias against disabled and/or older employees and/or employees who seek reasonable accommodations for a disability.

[48]    **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are age forty (40) and over, and who have been discriminated against based on age (including intentional age discrimination and disparate impact on older workers) in connection with hiring, promotion, demotion, compensation, being subjected to a hostile work environment, failure to be promoted, position selection, and/or termination decisions.**

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my disability (including history of and regarded as) and my age (64), and

7

retaliated against me for seeking reasonable accommodations for my disability in violation of the

Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Age

Discrimination in Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"), the

Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the

Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.      The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices

in violation of:

**__X__      Pennsylvania Human Relations Act (Act of October 27, 1955, P.L.**

**744, as amended) Section 5 Subsection(s):  __(a); (d)__**

_____      Section 5.1 Subsection(s) _____

_____      Section 5.2 Subsection(s) _____

_____      Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.      Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

**__X__      This charge will be referred to the EEOC for the purpose of dual**

**filing.**

6.      The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and

procedure(s).

8

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## **VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

2/24/2021
(Date Signed)

(Signature)   Michael Kornspun
REDACTED
North Salem, NY 10560

# EXHIBIT 2

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Michael Kornspun**
REDACTED
**North Salem, NY 10560**

From: **Philadelphia District Office**
**801 Market St, Suite 1000**
**Philadelphia, PA 19107**

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17F-2021-61099 | **Damon Johnson,** | **(267) 589-9722** |
| | **State, Local and Tribal Program Manager** | |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC will continue to process this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Karen McDonough
06/27/2022
**Karen McDonough**
**Enforcement Manager**

Enclosures(s)

cc:
Katherine C. Oeltjen, Esq.
Console Mattiacci Law
1525 Locust Street, 9th Floor
Philadelphia, PA 19102

Amanda E. Steinke, Esq.
Jackson Lewis P.C.
Three Parkway
1601 Cherry St., Suite 1350
Philadelphia, PA 19102